
FILED
MAR - 4 2013
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION,<br><br>    Plaintiff<br><br>v.<br><br>BARBRANDA WALLS,<br><br>    Defendant. | 1:12-cv-664 (LMB/IDD) |

## MEMORANDUM OPINION

Plaintiff Wells Fargo Bank, National Association ("Wells Fargo") sued <u>pro se</u> defendant Barbranda Walls ("Walls") for payment and performance of all obligations owed under a defaulted loan. The Court granted summary judgment in favor of Wells Fargo on December 28, 2012. Now before the Court is plaintiff's Motion for Attorneys' Fees and Costs [Dkt. No. 49], to which Walls has filed an opposition.

### I. BACKGROUND

In 2005, Wells Fargo extended Walls a $600,000 real estate loan that was secured by a lien on and security interest in investment property that she owned in the District of Columbia, which is currently in foreclosure proceedings. <u>See</u> Compl., Ex. 1 ("Promissory Note") & Ex. 2 ("Deed of Trust"). Walls defaulted under the Promissory Note after failing to make payments since June 4, 2008, and Wells Fargo sued to recover the

balance of the Note. Mem. in Opp'n to Def.'s Mot. to Transfer ("Opp'n to Transfer"), at 1; Compl. at 2-3.

Given defendant's admissions throughout the litigation, the Court found no genuine issues of material fact in dispute and awarded summary judgment to plaintiff, ordering Walls to pay the unpaid principal of $672,349.04 plus interest as required by the Promissory Note.[1] See Dkt. Nos. 39, 54. Wells Fargo filed the instant motion on January 11, 2013 to recover all attorneys' fees and costs incurred between January 2007 and December 2012, and provided defendant with the proper notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

On January 29, 2013, Walls filed an Opposition to Planitiff [sic] Wells Fargo's Motion for Attorney Fees ("Opp'n"). In that pleading, Walls attacked the enforceability of the judgment and asserted that Wells Fargo's attorneys' fees and costs "were not earned and are not legally chargeable" because they constitute "ridiculous amounts for unexplained activities" that are "fraudulent, unnecessary and duplicative," particularly those associated with filing the instant civil action during the pendency of foreclosure proceedings in the District of Columbia. Opp'n at 9-10. Because Walls's "Opposition" did not make

---

[1] Walls appealed this Order, and her appeal is now pending before the United States Court of Appeals for the Fourth Circuit. See Dkt. No. 51; Wells Fargo Bank, N.A. v. Barbranda Walls, No. 13-1087 (4th Cir. filed Jan. 18, 2013).

2

specific objections to plaintiff's claim for fees and costs, she was ordered on January 31, 2013 to file "any specific objection to the attorneys' fees and litigation expenses, . . . within fourteen (14) days." Dkt. No. 61. On February 14, 2013, Walls filed an Amended and Refiled Opposition to Defendant [sic] Wells Fargo's Motion for Atorney [sic] Fees ("Am. Opp'n"), which duplicated her original twelve-page Opposition and added approximately two pages of bold text in which she "request[s] that the Court stay the fee decision until a decision is issued on the appeals level." Am. Opp'n at 1. The Amended Opposition did not dispute the hourly rates for plaintiff's attorneys or any of the costs.

## II. DISCUSSION

### A. Appropriateness of Attorney Fees

A district court may award attorneys' fees and costs while an appeal on the merits of the underlying controversy is pending. See Langham-Hill Petroleum Inc. v. Southern Fuels Co., 813 F.2d 1327, 1330-31 (4th Cir. 1987) (recognizing that a request for attorneys' fees raises issues collateral to the main cause of action). Although Walls has requested that this litigation be stayed pending appeal, the Court finds that resolving Wells Fargo's Motion for Attorneys' Fees and Costs would avoid "[p]iece-meal appeals" and promote judicial economy by "permit[ting] appeals from fee awards to be considered

together with any appeal from a final judgment on the merits." Id. at 1331 (citing White v. N.H. Dep't of Emp't Sec., 455 U.S. 445, 454 (1982)).

In this civil action, the loan documents signed by the defendant provide an adequate contractual foundation for plaintiff's request for attorneys' fees and costs. The Promissory Note reads, in relevant part:

> **ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Borrower shall pay <u>all</u> of Bank's reasonable expenses actually incurred to enforce or collect any of the Obligations <u>including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy</u> proceeding.

Promissory Note at 3 (emphasis added). The Deed of Trust states as follows:

> **Indemnification.** Grantor shall protect, indemnify and save harmless Bank from and against all losses, liabilities, obligations, claims, damages, penalties, fines, causes of action, <u>costs and expenses (including, without limitation, reasonable attorneys' fees and expenses)</u> (collectively, "Damages") imposed upon, incurred by or asserted against Bank on account of or in connection with (i) the Loan documents or any failure or alleged failure of Grantor to comply with any of the terms of, or the inaccuracy or breach of any representation in, the Loan Documents; . . . .

Deed of Trust at 6 (emphasis added). The Deed of Trust explicitly reiterates elsewhere that certain costs are to be

4

borne by the defaulting borrower, such as the cost of environmental inspections. See id. at 5 ("The cost of such inspections made after Default or which are required by laws or regulations applicable to Bank shall be borne by Grantor.").

B. Legal Standard

A court must assess the reasonableness of attorneys' fees by first calculating the "lodestar figure," i.e., the reasonable hourly rate times the number of hours reasonably expended, in light of the twelve factors set forth in Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978). See Grissom v. The Mills Corp., 549 F.3d 313, 320-21 (4th Cir. 2008). Those factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Kimbrell's, 577 F.2d at 226 n.28. The Court need not address all twelve Kimbrell's factors independently "because such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly

rate." Freeman v. Potter, No. 7:04cv00276, 2006 U.S. Dist. LEXIS 65329, at *6 (W.D. Va. Sept. 13, 2006) (citing Hensley v. Eckerhart, 461 U.S. 424, 434 n.9 (1983)). The Court need only discuss in detail "those factors that are relevant to its determination of the reasonable amount of attorney[s'] fees to award in each particular case." Kennedy v. A Touch of Patience Shared Housing Inc., 779 F. Supp. 2d 516, 526 (E.D. Va. 2011).

C. Reasonable Fees

Wells Fargo asserts that it has incurred $99,094.19 in attorneys' fees since 2007. Mem. and Verified Aff. in Supp. of Mot. for Attorneys' Fees and Costs ("Feehan Aff.") at 3-4 (quoting $62,477.19 of billed work[2] and $36,607.00 of recent, as-yet unbilled work). Those fees are attributed to work performed by eight attorneys and five paralegals from the firm Kutak Rock LLP ("Kutak Rock").[3] Id. at ¶¶ 9, 13. Partner Loc Pfeiffer, who

---

[2] The actual billable total for work performed between January 1, 2007 and December 10, 2012 was $71,184.00, but counsel reduced that amount to $64,880.50. Feehan Aff. at ¶ 11. Wells Fargo was then billed that amount, but because it "has only paid $62,487.19 of the amount billed for that time period, Wells Fargo only seeks reimbursement of $62,487.19." Id. at ¶ 8. The Court will interpret the references in ¶ 8 to the figure "$62,487.19" to be a typographical mistake given that a lesser amount, $62,477.19, appears in ¶ 4 and, when combined with the other fees and costs Wells Fargo seeks, results in a total of $251,624.08, which is the sum that the pleadings repeatedly state is sought. See Mot. for Attorneys' Fees and Costs, at 1; Feehan Aff. at 3, 9.

6

has spent most of his career representing creditors and oversaw this litigation, charges a standard hourly fee of $400, which was discounted to $270 for this action. Id. at ¶ 22. Allison Feehan, who is of counsel and has been practicing primarily financial services litigation since the conclusion of her judicial clerkship in 1993, avers that her standard hourly fee is $285, which was discounted to $260. Id. at ¶ 27. Jennifer Blunt, who is of counsel and has concentrated in commercial and general civil litigation since graduating from law school in 1991, charged a discounted hourly fee of $270 at the time she billed work to Wells Fargo. Id. at ¶ 23. Five associates - Kim Pierro, Ronald Page, Hannah Hutman, Robert Sledz, and Ellen Valentine - billed Wells Fargo at discounted rates between $175 and $215. Id. at ¶¶ 9, 15, 17-18, 26, 28. Five paralegals - Sara Abrams, Lynda Wood, Sonia Elliott, Whitney Corbett, and Jennifer Dodge - billed Wells Fargo at discounted rates between $130 and $135. Id. at ¶¶ 9, 16, 20-21, 24-25.

Although Wells Fargo's affidavit does not state the level of experience of all the individuals whose time has been billed on this matter, defendant has not contested the hourly rates of any of the Kutak Rock employees in this case. Moreover, the attorneys' hourly rates fall well within the range of

---

[3] The work of one associate and one paralegal on this matter, which yielded a combined total of less than three billable hours, was not billed to Wells Fargo. Feehan Aff. at ¶¶ 9, 13.

7

appropriate rates for the region identified by the Fourth Circuit in Grissom v. Mills Corp., 549 F.3d 313, 322-23 (4th Cir. 2008). See id. (analyzing Northern Virginia rates and finding $335 a reasonable rate for a partner with 18-19 years of experience, $250 reasonable for an associate with 5-6 years of experience, and between $180 and $200 reasonable for an associate with 1 year of experience). Of course, Grissom concerned only the rates of Northern Virginia attorneys and are not necessarily controlling in this fee petition, which involves 10 timekeepers who worked in Richmond and three who worked in the District of Columbia. See W.A.K. ex rel. Karo v. Wachovia Bank, N.A., No. 3:09cv575, 2010 WL 3074393, *4 (E.D. Va. Aug. 5, 2010) (noting that comparison to the Grissom rates would be "of limited value" for defining prevailing rates in the Richmond area); McAfee v. Boczar, No. 3:11cv646, 2012 WL 5398807, *7 n.3 (E.D. Va. Nov. 2, 2012) (observing that "[r]ates in Washington, D.C. are considerably higher than those in Richmond for equally qualified and experienced attorneys"); Grissom, 549 F.3d at 323 (adjusting rates in the District of Columbia downward for Northern Virginian attorneys given the lack of evidence that those rates constitute "a reliable indicator of the hourly rates of litigation attorneys in Reston, Virginia, a suburb of Washington, D.C."). Nevertheless, after carefully reviewing the hourly rates of each attorney and paralegal, the Court is

satisfied that the charged rates were reasonable and consistent with rates that have been approved in similar cases before this Court, including a case litigated by some of the same attorneys less than two years ago that involved the same or higher hourly rates than those billed in this civil action. See People's United Equip. Fin. Corp. v. Wright, No. 1:11-cv-249, 2011 WL 2607155, *6 (E.D. Va. June 9, 2011), report and recommendation adopted by 2011 WL 2619085 (E.D. Va. June 30, 2011) (approving hourly rates of $270 for Loc Pfeiffer, $285 for Allison Feehan, $200 for an associate, and between $75 and $140 for non-attorney staff as reasonable).

Defendant also does not contest the number of hours billed by Kutak Rock, other than to assert that "[t]he ridiculous amounts for unexplained activities contaminates [sic] the entire fee schedule" and are "fraudulent, unnecessary and duplicative." Am. Opp'n at 11-12; Opp'n at 9. Defendant claims that the instant litigation was unnecessary because it was duplicative of Wells Fargo's foreclosure action against her in the District of Columbia, which she believes also sought to confirm her delinquency on the Promissory Note. See Am. Opp'n at 4; Opp'n at 2.

Defendant's position on plaintiff's request for attorneys' fees and costs is meritless. Indeed, the record reflects that Walls's unreasonably litigious conduct has magnified the costs

of litigation in this District and elsewhere by complicating what would otherwise have been a standard mortgage default case. Much of those litigation costs could have been avoided if Walls had behaved more reasonably. For example, Walls has not disputed the essential facts upon which the award of summary judgment to Wells Fargo was based: that she executed the Promissory Note and the Deed of Trust at issue and failed to make payments on the Note since June 2008. See Dec. 28, 2012 Order [Dkt. No. 39].[4]

An abridged history of Walls's conduct begins with her refusal to satisfy Wells Fargo's demands for missed loan payments, see Compl. at ¶¶ 13-14, forcing Wells Fargo to file the instant litigation to collect a judgment for the unpaid principal, interest, and associated attorneys' fees and costs,[5]

---

[4] To the extent that Walls now claims that she "does not concede that she was in default or delinquent on the Debt Instruments or that she was in breach of contract," Am. Opp'n at 5, those facts have already been established. See Dec. 28, 2012 Order (granting summary judgment).

[5] In fact, Wells Fargo has stated that its decision to file suit in the Eastern District of Virginia was to move the litigation as expeditiously as possible, representing that it "chose to proceed in this Court because it is anxious understandably to reach a conclusion on this matter" because Walls was "overdue on all payments dating back to June 4, 2008" and her "repeated failure to pay real estate taxes" was causing Wells Fargo to "continue[] to incur additional expenses in order to satisfy tax liens." Opp'n to Transfer at 3. As the billing documentation from Kutak Rock reflects, counsel was hired to assist Wells Fargo with those tax lien issues as early as August 13, 2007, and was directed to commence foreclosure proceedings in early

and later schedule a non-judicial foreclosure sale of the secured property in the District of Columbia.[6] See Compl.

Rather than make any payment of the note, on September 17, 2012 (the day before the foreclosure sale was to occur), Walls filed in the Superior Court for the District of Columbia a complaint for real property (submitted through counsel, an attorney named Harry Spikes), which was also docketed as a motion for a temporary restraining order ("TRO") to block the foreclosure sale (submitted pro se[7]). Walls v. Wells Fargo Bank, Nat'l Ass'n, No. 2012 CA 7467 R(RP) (D.C. Sup. Ct. filed Sept. 17, 2012); see also Br. in Supp. of Mot. to Dismiss Countercl. of Def. Barbranda Walls ("Countercl. Opp'n"), at 3. The court denied Walls a TRO because she failed to demonstrate a likelihood of success on the merits, raised arguments that were

---

2008 after Walls failed to pay the lien. See Feehan Aff., Ex. 3, at 4-6.

[6] Br. in Supp. of Mot. to Dismiss Countercl. of Def. Barbranda Walls at 3. That pleading mistakenly notes Walls's filing date as August 17, 2012 and the date of the foreclosure sale as August 18, 2012, but the correct date is reflected on the D.C. Superior Court's docket, see Walls v. Wells Fargo Bank, Nat'l Ass'n, No. 2012 CA 7467 R(RP) (D.C. Sup. Ct. filed Sept. 17, 2012), and in Wells Fargo's recent motion to dismiss Walls's action in federal court in D.C., see Walls v. Wells Fargo Bank, Nat'l Ass'n, No. 1:13cv126, Dkt. No. 5, at 5 (D.D.C. filed Jan. 30, 2013).

[7] Although the TRO motion was filed pro se, Mr. Spikes appeared on Walls's behalf at the TRO hearing and appeared at subsequent proceedings in Superior Court. Walls v. Wells Fargo Bank, Nat'l Ass'n, No. 2012 CA 7467 R(RP) (D.C. Sup. Ct. filed Sept. 17, 2012).

11

"not supported by evidence," and because "[t]o the extent there is disagreement re[] amount owed – there is an adequate remedy at law." No. 2012 CA 7467 R(RP).

The sale proceeded and resulted in a contract, but was apparently unable to close because of title issues, created in part by Walls's continued pursuit of litigation in Superior Court.[8] Br. in Supp. of Damages at 2. After the TRO hearing, the court dismissed Walls's complaint on the grounds that its sole request for injunctive relief was moot because the foreclosure sale had already taken place. See Walls v. Wells Fargo Bank, Nat'l Ass'n, No. 1:13cv126, Dkt. No. 1, at 124 (D.D.C. filed Jan. 30, 2013) (after removal to federal court). The court then denied Walls's motion for leave to amend without prejudice, observing that "[i]t is difficult to determine whether Ms. Walls should be allowed to file an amended complaint because she did not attach the amended complaint to her motion," but that in any case, "the only amendment that Ms. Walls specifically seeks leave to make is to add her husband, Hal Walls, as a plaintiff" without any evidence that he "would be a

---

[8] As Wells Fargo indicates, there also appear to be other unresolved title issues with the property, as evidenced by the commencement of a quiet title action against Walls and a number of other prior owners. See Wells Fargo Bank, N.A. v. J.B. Froe Props., Inc., No. 1:13cv47, Dkt. No. 1 (D.D.C. filed Jan. 11, 2013). The Complaint in that action specifies that "[n]o relief is requested directly against Walls, who is included in this action solely due to her interest in the Property." Id. at 3.

12

proper party-plaintiff." Id. at 124-25. After further motions, Walls eventually obtained leave to file an amended complaint on January 14, 2013. Id. at 202. But the 23-page Amended Complaint that was provided to the court contained an unsigned, unintelligible litany of claims that demanded, among other things, rescission of the foreclosure sale and at least $9.9 million in damages. See id. at 131-153. Wells Fargo removed the case to the United States District Court for the District of Columbia on January 30, 2013, and its request for dismissal of the Amended Complaint and relief from "Walls's continued and relentless pursuit of this baseless litigation" is currently pending in that forum. Id., Dkt. No. 5.

Meanwhile, Walls has taken every opportunity to oppose Wells Fargo's efforts in this district to obtain a judgment for the unpaid balance of the Promissory Note. Despite being served on June 26, 2012, Walls failed to file a responsive pleading and default was initially entered against her. See Dkt. Nos. 4, 8-9. After the default was vacated pursuant to a joint proposed Order allowing her to file a responsive pleading by September 7, 2012, see Dkt. No. 12, Walls failed to file such a pleading and instead filed a motion to transfer the lawsuit to the District of Columbia, see Dkt. No. 14. That motion was denied for several reasons, including the fact that Walls resides in

Alexandria, Virginia.[9] During the hearing on the motion to transfer, Walls admitted that she filed her pleadings after consulting with attorney Harry Spikes. The Court orally admonished her not to represent herself as pro se if she was receiving assistance of counsel. Cf. Countercl. Opp'n at 2 n.1.

Two weeks later, Walls filed a counterclaim against Wells Fargo demanding $1 million in damages on the basis of threadbare, single-sentence allegations of fraud, breach of contract, and violations of the implied covenant of good faith and fair dealing. See Dkt. No. 20. Wells Fargo moved to dismiss, but instead of responding with an opposition brief, Walls filed a request to allow her husband Hal Walls to participate in the litigation, which was denied. See Dkt. No. 30. In the same pleading, she also conceded that she was "not saying that we were not behind on the mortgage" or "that Wells Fargo was not entitled entitle [sic] to some compensation," but rather that the judgment against her "must be reduced" by the amount that Wells Fargo obtains for the property at the foreclosure sale. Resp. to Mot. to Dismiss Def.'s Countercl. ("Countercl. Reply"), at ¶ 9. Of course, Wells Fargo has never disputed this point,

---

[9] The Court also noted Wells Fargo's unrebutted allegation that the property at issue was investment property from which "on information and belief, [Walls] continues to receive rental income without any payment to Plaintiff or payment of property taxes." Opp'n to Transfer at 1.

exposing the wild accusations and demands in the counterclaim to be little more than frivolous delay tactics.

After dismissal of the counterclaim, Wells Fargo filed a motion for summary judgment on December 5, 2012 in which it noted that Walls had failed to meet any of her discovery deadlines or to respond to any of its discovery requests. See Br. in Supp. of Mot. for Summ. J. at 2. In an affidavit supporting a motion to compel product of those materials, plaintiff's counsel described repeated efforts to contact Walls and even her attorney advisor, Harry Spikes, and attached e-mail correspondence showing that Walls and Spikes had been advised multiple times that continued failure to respond to discovery requests would force Wells Fargo to file a motion to compel that would "simply run up attorneys' fees unnecessarily." Aff. in Supp. of Mot. to Compel, Ex. 1.

Upon receiving no response from Walls to Wells Fargo's dispositive motion, the Court granted summary judgment in plaintiff's favor on December 28, 2012. Dkt. No. 39. After the Court had ruled, Walls filed a motion requesting extension of the discovery period and more time to respond to Wells Fargo's motion for summary judgment, complaining that she "d[id] not have enough information to oppose the summary judgment motion at this time." Dkt. No. 41. The Court denied the motion, observing that Walls "did not offer any reasonable explanation

15

for her failure to file initial discovery disclosures or to respond in any respect to plaintiff's various discovery requests." Dkt. No. 43.

Given the tortured litigation chronicled above, the Court ascribes no credibility to Walls's protests that Wells Fargo is responsible for unnecessarily expanding its attorneys' fees and costs. Her general objection that Wells Fargo is not entitled to fees for litigation in this District because it was "duplicative" of the foreclosure proceedings in the District of Columbia is equally unpersuasive. Indeed, the Court orally advised Walls at the September 13, 2012 hearing on her motion to transfer that this civil action was different from any foreclosure-related proceedings in the District of Columbia and involved the totally separate, discrete issue of whether the Promissory Note had been paid.[10] Apart from one meritless

---

[10] Wells Fargo also flagged this distinction in its pleadings early in the litigation:

> There is no pending matter in the District of Columbia to consolidate. There is only a non-judicial foreclosure. Moreover, the present suit is brought to determine Ms. Wall[s]'s liability under the Note. In contrast, the non-judicial foreclosure only enforces Plaintiff's deed of trust in the Property. The issues are distinct and consolidation cannot and should not be forced over Plaintiff's objection.

Opp'n to Transfer at 3.

digression, Walls has not contested the billing of any specific work performed during the litigation.[11]

Therefore, the Court finds that the number of hours for which fees are sought is reasonable. Although it is concerning that fees are sought for over a dozen different attorneys and paralegals, the Court accepts counsel's assurance that "[t]he large number of timekeepers on this matter is not unusual given the fact that this matter dates back to 2007, and necessarily involved the efforts of multiple offices, by virtue of the fact that Defendant resides in Virginia, while the Property . . . is situated in the District of Columbia." Feehan Aff. at ¶ 12. Moreover, the vast majority of the billed amount is attributable to work performed by two experienced attorneys. Specifically, of the approximately 435 hours of work on this matter, the lion's share of those hours were logged by partner Loc Pfeiffer (approx. 180 hours) and of counsel Allison Feehan (approx. 175

---

[11] Walls's only specific reference to counsel's fees is to a "$17,126.50" figure, which she places in the context of a single September 28, 2012 entry for "[r]eview[ing] and [a]nalyz[ing] Defendant's answer and counterclaim against Bank in Federal Court" before claiming that "ridiculous amounts for unexplained activities contaminates [sic] the entire fee schedule." Am. Opp'n at 11; Opp'n at 9. However, as Wells Fargo points out, not only is Walls actually referring to the total figure for all pre-discount fees billed by attorney Allison Feehan between June 5, 2012 and September 28, 2012, but she incorrectly quoted that number from the billing documentation (the correct number is $17,128.50). Feehan Aff., Ex. 3, at 48; see Rebuttal Br. in Supp. of Wells Fargo's Mot. for Attorneys' Fees and Costs [Dkt. No. 60] at 1-2.

hours), who together contributed over four-fifths of the total hours for this litigation and directed the work of a single associate - Kim Pierro - on related tasks (approx. 35 hours). Those attorneys have considerable experience in financial services litigation and are specialists in that field. As a result of their advocacy, plaintiff prevailed in this civil action. There is no indication that plaintiff's counsel has over-litigated this action or that more resources were devoted to it than necessary.

For these reasons, the Court finds the properly-calculated lodestar amount to be $99,094.19 for services rendered between 2007 and 2012, and that none of the other Kimbrell's factors support any adjustment to this figure.

D. Reasonable Costs

Defendant also seeks taxation of $152,529.89 in costs pursuant to the relevant provisions of the loan documents. See supra at 4-5. That amount includes auction- and foreclosure-related expenses of $79,595.27 ($63,000.00 in auction commissions, $5,000.00 in auction expenses, $8,287.50 in the trustee's foreclosure and litigation fees, and $3,307.77 in the trustee's foreclosure expenses). Feehan Aff. at ¶ 4. It also includes $23,695.00 in appraisals and environmental assessments specifically contemplated by the Deed of Trust. Id.; see Compl., Ex. 2, at 5. Finally, it covers $49,249.62 in

additional foreclosure-related expenses; of that amount, $47,519.06 that was paid for "Litigation Support Vendors" and "Miscellaneous" is broken down into itemized entries, including payment of $14,217.58 for 2009-2010 District of Columbia property taxes, a $6,440.94 payment for a 2008 tax lien, and various other fees paid for "[f]oreclosure [s]ervices," water bills, title searches, property reports, and photocopies. Feehan Aff. at ¶ 4; id., Ex. 1 at 1-3. The remaining $1,730.56 portion is attributed to a number of smaller litigation-related expenses.[12] The Court accepts these expenses as reasonable and accordingly, will add $152,529.89 in costs.

III. CONCLUSION

For the above-stated reasons, the Court will award attorneys' fees to Wells Fargo in the amount of $99,094.19, representing the fees incurred from the time counsel became involved in this matter through the briefing of Wells Fargo's motion for summary judgment, as well as $152,529.89 in costs. An Order granting plaintiff's motion will issue along with this Memorandum Opinion.

Entered this 4th day of March, 2013.

Alexandria, Virginia

/s/ Leonie M. Brinkema
United States District Judge

---

[12] Those include: $428.18 in filing fees, $335.32 in mileage, $275.29 in hotels, $215.00 in process server fees, $128.91 in reproduction costs, $123.96 in Federal Express fees, $81.00 in courier services, $50.00 in parking, $39.82 in printing, $32.52 in postage, and $20.56 in meals. Feehan Aff., Ex. 1 at 1.